UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

|  |  |  |
|---|---|---|
| JAMES KEVIN GOSSETT, | : | Case No. |
|  | : |  |
| Plaintiff, | : | **COMPLAINT** |
| vs. | : |  |
|  | : | **DEMAND FOR JURY TRIAL** |
| MARLINS TEAMCO LLC d/b/a | : |  |
| "MIAMI MARLINS" and | : |  |
| LOS ANGELES DODGERS LLC d/b/a | : |  |
| "LOS ANGELES DODGERS" | : |  |
| Defendant. | : |  |

The Plaintiff, JAMES KEVIN GOSSETT ("Plaintiff"), by and through undersigned counsel, as and for his Complaint against defendants, MARLINS TEAMCO LLC d/b/a "Miami Marlins" ("Marlins") and LOS ANGELES DODGERS LLC d/b/a "Los Angeles Dodgers" ("Dodgers") hereby alleges as follows:

### INTRODUCTION

1. This is the case of the Ohtani stolen base that was *stolen*.

2. Simply, Defendants, the L.A. Dodgers and Florida Marlins, must be called "out" for their foul play in cheating a hobbyist baseball memorabilia collector out of a stolen base by Shohei Ohtani that he purchased fair and square.

3. Plaintiff and the Marlins entered into a contract whereby Plaintiff agreed to purchase a game-used base related to Shohei Ohtani, the Los Angeles Dodgers' superstar's, 50th stolen base of the season for $2,500.

4. Notwithstanding Plaintiff's agreement with the Marlins, the Los Angeles Dodgers later decided they wanted the base, and the Dodgers and Marlins colluded and schemed to have the Marlins breach their agreement with Plaintiff and instead sell the base to the Dodgers for more money and consideration, believing there was nothing Plaintiff could or would do about it.

1

Plaintiff has brought this action against the Marlins and Dodgers to hold them accountable and recover the Ohtani stolen base stolen from Plaintiff.

5. Shohei Ohtani, nicknamed "Shotime," is a Japanese professional baseball pitcher and designated hitter considered to be one of the greatest baseball players of all time, and often compared to Babe Ruth. On December 11, 2023, the Dodgers signed Shohei Ohtani to a $700 million contract to play for the Dodgers for 10 years.

6. On September 19, 2024, Ohtani added to his legacy and accomplishments, when he became the first player in baseball history to hit 50 home runs and steal 50 bases in the same season.

7. This action concerns the ownership of second base on the field in the first inning of a game between the Dodgers and Marlins on September 19, 2024 during which Ohtani recorded what is widely considered the greatest offensive performance in Major League baseball history. During this game, Ohtani not only achieved his 50th and 51st stolen bases of the season, but Ohtani also hit his 49th, 50th and 51st home runs of the seasons.

8. During the game, the Marlins confirmed to Plaintiff in writing that "second base at the time of #50 has been pulled and set aside for you. Will invoice tonight." However, two days later, the Marlins breached the agreement with Plaintiff when they refused to deliver the base to Plaintiff and instead sold it to the Dodgers.

9. The Marlins' and Dodgers' conduct is disquieting. These are billion-dollar baseball franchises who have schemed together out of pure greed and power to steal the Ohtani stolen base from a fan who is its rightful owner.

10. Plaintiff refuses to be bullied by the Dodgers who have an estimated franchise value of $4.8 *billion*, or the Marlins, who have a franchise value of $1 *billion*, out of what his

2

rightfully his. Plaintiff has filed this federal action against the Marlins and Dodgers to recover the base.

11. As a result of the Marlins' breach, Plaintiff sustained damages for the value of that base.

## THE PARTIES

12. Plaintiff James Kevin Gossett is a hobbyist baseball memorabilia collector and resident of Greenville, South Carolina.

13. Defendant Marlins Teamco LLC d/b/a "Mami Marlins" (the "Marlins") is a Delaware limited liability company. The Marlins is wholly owned by Marlins Funding LLC, which is a Delaware limited liability company. Marlins Funding LLC is wholly owned by Marlins Holdings LLC, which is a Delaware limited liability company.

14. The Marlins are a Major League baseball team in the National League whose headquarters are located at 501 Marlins Way, Miami, Florida, 33125.

15. Defendant Los Angeles Dodgers LLC d/b/a "Los Angeles Dodgers" (the "Dodgers") is a Delaware limited liability company. The Dodgers is wholly owned by Los Angeles Dodgers Holding Company LLC, which is a Delaware limited liability company. Los Angeles Dodgers Holding Company LLC is wholly owned by LA Holdco LLC, which is a Delaware limited liability company.

16. The Dodgers are a Major League baseball team in the National League whose headquarters are located at 1000 Vin Scully Avenue, Los Angeles, California.

## JURISDICTION AND VENUE

17. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the plaintiff and Defendants are citizens of different states and the amount in controversy exceeds $75,000.

18. The Marlins are subject to personal jurisdiction in this judicial district because the Marlins maintain their principal place of business in this judicial district at 501 Marlins Way, Miami, Florida, 33125.

19. The Dodgers are subject to personal jurisdiction in this judicial district because this action arises out of a transaction between the Dodgers and Marlins made in this judicial district on September 19, 2024 concerning a base that was located in this judicial district on that date. In addition, the Dodgers do business in this judicial district by playing the Marlins in Miami every year, including the game on September 19, 2024 at issue in this case. Further, the causes of action herein arise out of the Dodgers' business in this judicial district on September 19, 2024, specifically, the Dodgers' transaction with the Marlins for the base, and taking possession of the base at issue in this judicial district, during the Marlins-Dodgers game in Miami on September 19, 2024.

20. Venue is proper in this judicial district because the Marlins maintain their headquarters in this judicial district and this controversy arises out property (the base) that was located in this judicial district and transactions and conduct between Plaintiff and the Marlins, and the Dodgers and the Marlins, that occurred in this judicial district on September 18-19, 2024.

### THE FACTS

21. The Marlins are a Major League Baseball team operating in Miami Florida.

22. The Marlins operate a business selling game-used memorabilia merchandise.

23. The official email address for all business concerning the Marlins' sale of game-used memorabilia merchandise is gameused@marlins.com.[1]

24. Items offered for sale by the Marlins include jerseys, caps, locker tags, batting helmets, pants, lineup cards, bases, baseballs, bats, and rosin bags.

---

[1] https://www.mlb.com/marlins/fans/game-used

4

25. On Tuesday, September 17, 2024, Plaintiff emailed the Marlins at gameused@marlins.com to inquire into purchasing a game used base, "from a specific game and specific inning." Exh. 1.

26. The Marlins responded thirty minutes later from the same email address that Plaintiff emailed, and stated, "Kevin, could you please specify the parameters of the base you are looking to purchase? Thank you." Exh. 1.

27. The next day, September 18, 2024, Plaintiff responded that he agreed to pay $2,500 for the base that Ohtani left from to steal his 50th base of the season:

> What I want is the base that Ohtani takes off from when he steal[s] number 50. I know he wants the base he stole I was told that at the braves game. But I want the base he left from. This is for a special gift for someone, thanks. Please let me know if we are good. If that's tonight or tomorrow that's the base I want and I will pay the $2500. (Exh. 1).

28. The Marlins replied minutes later that the base Ohtani steals for his 50th stolen base will go to the Dodgers archives: ""Base #50 will not be available. It is going to the [Hall of Fame]/Dodgers archives." Exh. 1.

29. Plaintiff responded minutes later on September 18, 2024:

> Correct I know #50 will not be available I want the base he takes off from so if he steals 2nd I want 1st, if he steals 3rd I want second. Not the base he stole, but the base he took off from. We good on that one correct?

Exh. 1.

30. The Marlins responded minutes later on September 18, 2024: "Understood. If it happens today [9/18/24] or tomorrow [9/19/24], *yes*." (emphasis added). Exh. 1.

31. Plaintiff, to ensure there was a meeting of the minds and an agreement, emailed the Marlins to confirm it was "a done deal" if Ohtani stole his 50th base "today [9/18/24] or tomorrow [9/19/24]:

5

> **From:** Kevin Gossett <Kevin@almarose.com>
> **Sent:** Wednesday, September 18, 2024 7:54:53 PM
> **To:** Game Used <GameUsed@marlins.com>
> **Subject:** Re: Game Used Base Purchase Urgent
>
> Ok thank you. So it's a done deal and mine if he does it today or tomorrow correct? And thank you so much. This means a lot to me. I appreciate you.

Exh. 1.

32. Minutes later, the Marlins unequivocally confirmed the deal was "done," stating, "Yes sir!":

> On Sep 18, 2024, at 8:01 PM, Game Used <GameUsed@marlins.com> wrote:
>
> Kevin,
>
> Yes sir! The only reason I am not invoicing you now is because we would prefer it happens first. That way we don't need to run a refund after the fact.

Exh. 1.

33. The next night (September 19, 2024), Ohtani "accomplished something we've never seen in the history of Major League Baseball: 50 home runs and 50 stolen bases in a single season."[2]

34. As reported in the New York Times "Ohtani's performance Thursday night [9/19/24] was historic in multiple ways. Not only did he reach 50/50 for the season, but he went 6-6 with three homers, 10 RBI and two stolen bases – the first time an MLB player has ever put together that stat line in a single game."[3] Columnist, Rick Reily, at the Washington Post, called Ohtani's performance, "the most mind boggling game ever."[4] Similarly, Forbes columnist, Jack Magruder, reported that Ohtani's September 19, 2024 performance could "fairly be called the best offensive game in MLB history . . . No hyperbole added." The New York Times called

---

[2] https://www.usatoday.com/story/sports/mlb/2024/09/19/shohei-ohtani-50-home-runs-stolen-bases-who-else/75297503007/

[3] https://www.nytimes.com/athletic/5781104/2024/09/19/shohei-ohtani-50-home-run-ball/

[4] https://www.washingtonpost.com/opinions/2024/09/23/dodgers-shohei-ohtani-baseball-greatest/

Ohtani's game "a single-game performance for the ages."[5]

35.     In the first inning of the Marlins-Dodgers game on September 19, 2024[6] at the Marlins stadium in Miami, Ohtani stole third base (leaving from second base) for his 50th steal of the season.

36.     Plaintiff immediately emailed the Marlins during the September 19, 2024 game with the news:

> **From:** Kevin Gossett <Kevin@almarose.com>
> **Sent:** Thursday, September 19, 2024 4:48:09 PM
> **To:** Game Used <GameUsed@marlins.com>
> **Subject:** Re: Game Used Base Purchase Urgent
>
> Yes He did it!!!! Ohhh my. 1st inning 2nd base. Please email me right back to verify you will have your hands on that bag.. ohhh my thank you again for everything I'll send something special back to you.
>
> Kevin
> Sent from my iPhone

Exh. 1.

37.     During the game, the Marlins responded and confirmed to Plaintiff that second base "has been pulled and set aside for you."

> On Sep 19, 2024, at 5:25 PM, Game Used <GameUsed@marlins.com> wrote:
>
> Good afternoon Kevin,
>
> Second base at the time of #50 has been pulled and set aside for you. Will invoice later tonight.

Exh. 1.

38.     Accordingly, not only did Plaintiff and the Marlins reach an agreement regarding the sale of second base, but the Marlins "pulled the base" for Plaintiff.

39.     However, upon information and belief, despite the Marlins representation that second base had been pulled, the Marlins did not pull second base off the field.

40.     In the second inning of the September 19th game, Ohtani hit a single and then stole second base (the same base Plaintiff had already purchased and the Marlins failed to pull from the field) for his 51st steal of the season.

---

[5] https://www.nytimes.com/athletic/5781376/2024/09/20/shohei-ohtani-dodgers-best-game-ever/

[6] The September 19, 2024 game had a start time of 4:40 pm. Ohtani stole his 50th base in the first inning.

7

41. Upon information and belief, once Ohtani stole second base for his 51st steal of the season, the Dodgers wanted the base for its historical significance and during the game demanded that the Marlins breach their agreement with Plaintiff and sell them second base for money and/or other consideration in excess of what Plaintiff and the Marlins had agreed upon. The Marlins agreed and sold the base to the Dodgers, notwithstanding their deal with Plaintiff.

42. Ohtani's record making game was not finished. Ohtani went on to hit three home runs in the September 19th game: in the 6th inning, Ohtani hit his 49th home run of the season, in the 7th inning, his 50th home run (making him the first player to achieve 50 home runs and 50 steals in a season), and in the ninth inning, his 51st home run of the season. When the September 19th game ended, Ohtani had 51 home runs and 51 stolen bases for the season – the first player in baseball history to accomplish this feat.

43. Ohtani's achievement was reported in all major publications across the country:



44. On September 21, 2024, the Marlins emailed Plaintiff and confirmed they breached their deal with Plaintiff in writing:

> I am very sorry to inform you that the base you were interested in purchasing, 2nd base, at the time of Ohtani's 50th steal, is not available for purchase. The base went to the Los Angeles Dodgers. The reason for this was that base subsequently became stolen base #51, one inning later.

Exh. 1.

45. Of course, Plaintiff and the Marlins already had a deal to for sale and purchase of the base that the Marlins sold to the Dodgers.

46. Not only did they have a deal, but the base had been "pulled" for Plaintiff.

47. Notwithstanding their agreement, and that the Marlins represenation to Plaintiff they had pulled second base for Plaintiff, the Marlins breached their their agreement to sell second base to Plaintiff.

48. Upon infromation and belief, the Dodgers are in possession of the base that belongs to Plaintiff.

49. On October 23, 2024, Ohtani's 50th home run ball that was hit in the same game as Ohtani stole his 50th and 51st base on September 19th was auctioned off for a record setting price of nearly $4.4 million – the most ever paid for a game used baseball.

### COUNT ONE-BREACH OF CONTRACT
### (PLAINTIFF VS. MARLINS)

50. Plaintiff repeats and realleges all facts contained in the preceding paragraphs herein.

51. Plaintiff and the Marlins formed a contract, including all essential terms, for the purchase and sale of the base that Ohtani left from to steal his 50th base if it happened during the Marlins games on September 18th or 19th, 2024.

52. In the first inning of the September 19th, 2024 Marlins game against the Dodgers, Ohtani left from second base and stole third base for his 50th stolen base of the season.

53. The Marlins confirmed their agreement with Plaintiff and advised Plaintiff in writing that second base had been pulled for Plaintiff.

54. Notwithstanding the parties' agreement, the Marlins breached and refused to deliver second base to Plaintiff.

55. By refusing to deliver the base, the Marlins breached the Agreement.

56. Plaintiff is entitled to damages, including expectation damages as a result of the Marlins' breach that are in excess of the jurisdictional minimum of $75,000, and will be proven at the trial of this action.

## COUNT TWO-SPECIFIC PERFORMANCE
### (PLAINTIFF VS. MARLINS)

57. Plaintiff repeats and realleges all facts contained in the preceding paragraphs herein.

58. Plaintiff is clearly entitled to judgment against the Marlins for breach of contract concerning their agreement for the sale of the base.

59. Plaintiff has no adequate remedy at law because the base is of unique character and value as an item of significance in baseball history.

60. Just requires that the Marlins be ordered to deliver the base to Plaintiff.

## COUNT THREE-REPLEVIN
### (PLAINTIFF VS. MARLINS AND DODGERS)
### FLA. STAT. ANN. § 78.01 ET. SEQ.

61. Plaintiff repeats and realleges all facts contained in the preceding paragraphs herein.

62. Plaintiff is rightful owner of the second base from the first inning of the September 19, 2024 baseball game between the Marlins and Dodgers in Miami and is entitled to possession of the base.

63. To the best of Plaintiff's knowledge, information and belief, the base is currently in the possession of the Los Angeles Dodgers at its headquarters in Los Angeles California.

64. Plaintiff is the owner of the base at issue and/or is entitled to possession of the base pursuant to Plaintiff's agreement with the Marlins as identified herein, attached hereto as

Exhibit 1.

65. The base is wrongfully detained by the Los Angeles Dodgers who came into possession of the base from its original owner, the Marlins. Upon information and belief, the Dodgers came into possession of the base by tortiously interfering and knowingly causing the Marlins to refuse to deliver the base to Plaintiff pursuant to Plaintiff's agreement with the Marlins thereby breaching their agreement with Plaintiff and further causing the Marlins to deliver the base to the Dodgers despite Plaintiff's ownership and entitlement to possession of the base.

66. The base has not been taken for a tax, assessment, or fine pursuant to law.

67. The base has not been taken under an execution or attachment against the property of Plaintiff.

## COUNT FOUR – TORTIOUS INTERFERENCE WITH CONTRACT
### (PLAINTIFF VS. DODGERS)

68. Plaintiff repeats and realleges all facts contained in the preceding paragraphs herein.

69. Plaintiff and the Marlins had a contract for the sale of the base.

70. The Dodgers were aware of the contract between Plaintiff and the Marlins for the sale of the base.

71. The Dodgers intentionally caused the Marlins to breach their contract with Plaintiff for the sale of the base in order to acquire the base from the Marlins.

72. The Dodgers' actions in causing the Marlins to breach their contract with Plaintiff were not legally justified.

73. The Marlins breach of their contract with Plaintiff was not legally justified.

74. As a result of the Dodgers' interference with Plaintiff's contract with the Marlins, Plaintiff has suffered damages, including but without limitation, possession of the base, and the

amount that Plaintiff would obtain from the sale of the base.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all issues triable by right to a jury.

November 4, 2024

Respectfully submitted,

LETO LAW FIRM

By: */s/ Matthew P. Leto*
Matthew P. Leto
Florida Bar No. 104504
mleto@letolawfirm.com
201 S. Biscayne Blvd.
Suite 2700
Miami, Florida
P: (305) 341-3155

THE ROTH LAW FIRM, PLLC

Richard A. Roth (to be admitted phv)
rich@rrothlaw.com
Brian Levenson (to be admitted phv)
brian@rrothlaw.com
295 Madison Avenue, 22 Fl.
New York, NY  10017
(212) 542-8882
*Counsel for Plaintiff*